UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
(FORT WORTH DIVISION)

| | | |
|---|---|---|
| **ROI DEVELOPERS, INC. d/b/a ACCRUVIA** | § § § § § § § § § § § § | Case No. 4:22-cv-00073-O |
| *Plaintiff* | | (Formerly in the 96th District Court of Tarrant County, Texas Cause No. 096-331099-21 |
| VS. | | |
| **ATHENA BITCOIN, INC. d/b/a ATHENA BITCOIN GLOBAL** | | |
| *Defendant* | | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND BRIEF IN SUPPORT**

COMES NOW, Defendant Athena Bitcoin, Inc. ("Athena" or "Defendant" herein) and files this Motion for Summary Judgment seeking to dismiss all of the claims of Plaintiff ROI Developers, Inc. d/b/a Accruvia ("Accruvia" or "Plaintiff" herein) and would respectfully show the Court as follows:

**S U M M A R Y**

1.      The Defendant Athena has been included as a party Defendant in this case based upon a complaint that presents unfounded and untrue allegations against it, and that are known to be false or should have been known to be false by the Plaintiff Accruvia. Accruvia has sued Athena for breach of contract despite never having had any agreement or contract with Athena. Accruvia actively participated in negotiations in El Salvador with Athena Bitcoin Global ("ABIT" herein), a completely separate and distinct Nevada corporation, with whom it entered into an agreement which forms the basis of its cause of action in this proceeding. *See Appendix* at pp. 65-66*,* Oral

Deposition of Eric Gravengaard at pages 29-30, lines 20-25 and 1-25; *Appendix* at p. 34, Oral Deposition of Shaun Overton at page 64, lines 9-20.  ABIT is not Athena, which is a Delaware corporation.

2.   A "Term Sheet" that the representative of Accruvia signed in September 2021 with ABIT related to the subject matter of this litigation and did not involve Athena.  Furthermore, Accruvia's principal, Mr. Shaun Overton ("Overton"), did not sign a non-disclosure agreement with Athena, related to the subject matter of the current litigation, but rather with an entity registered in, and operating in the Republic of El Salvador known as Athena Holdings El Salvador, S.A. de C.V. ("AHES").  *See Appendix* at p. 86, Oral Deposition of Eric Gravengaard at pages 112-113, lines 23-25 and 1-9.  Finally, correspondence from counsel for Accruvia purporting to make demand for payment of the debt which forms the basis of this litigation was not addressed to Athena, but instead was addressed to ABIT, showing Plaintiff has always known that its services were provided to ABIT rather than Athena.  *See Appendix* at pp. 42-43, Oral Deposition of Shaun Overton at pages 97-99, lines 4-25, 1-25, and 1-19, respectively.

3.   The facts of this case do not involve a misnomer, but instead a misidentification, where Accruvia has sued and served an incorrect entity, i.e. one with zero interest and/or involvement in the facts underlying this suit.  *See Chilkewitz v. Hyson,* 22 S.W.3d 825, 828 (Tex. 1999); *In re Greater Houston Orthopaedic Specialists, Inc.*, 295 S.W.3d 323, 325 (Tex. 2009); *Nolan v. Hughes*, 349 S.W.3d 209, 210 (Tex. App.-Dallas 2011, no pet.).

4.   Thus, the Court should grant summary judgment in favor of Athena on the following grounds:

    a.   There is no evidence of one or more of the following elements of breach of contract, on which Accruvia has the burden of proof at trial:

       **1.** There is no evidence that there is a valid, enforceable contract between Accruvia and Athena for the provision of software development and support services by Accruvia to Athena;

       **2.** There is no evidence that Accruvia performed or tendered performance or provided any goods or services to Athena;

       **3.** Further, there is no evidence that Athena breached a contract with Plaintiff; and

       **4.** Lastly, there is no evidence that Athena's breach of a contract caused Accruvia injury.

    **b.** There is no evidence of one or more of the following elements of quantum meruit, on which Accruvia has the burden of proof at trial:

       **1.** There is no evidence that Accruvia provided Athena with valuable services or materials;

       **2.** There is no evidence that Athena accepted services or materials from Accruvia; and

       **3.** There is no evidence that Athena had reasonable notice that Accruvia expected to be paid by Athena for the services or materials.

    **c.** For the same reasons, there was never any hiring of Accruvia by Athena;

    **d.** There is no occurrence of events or omissions that occurred in Texas between Accruvia and Athena;

    **e.** Therefore, there is no amount owed to Accruvia by Athena.

## EVIDENCE

**5.** This Motion for Summary Judgment is based on Plaintiff's First Amended Original Petition, filed January 26, 2022, and the following evidence which is contained in the *Appendix* attached hereto and fully incorporated herein by reference thereto:

    a. ***Exhibit 1***: The Term Sheet signed and entered by and between ABIT and Accruvia on September 22, 2021 ("Term Sheet" herein) which was marked as *Exhibit 3* to the oral deposition of Eric Gravengaard taken on August 17, 2022 in this case;

    b. ***Exhibit 2***: Certified copy of the translated Non-Disclosure Agreement signed and entered into by Shaun Overton for the benefit of AHES;

    c. ***Exhibit 3***: Oral Deposition of Accruvia's corporate representative, Shaun Overton ("Accruvia Deposition") taken on August 16, 2022 in this case;

    d. ***Exhibit 4***: Oral Deposition of Athena's corporate representative, Eric Gravengaard ("Athena Deposition") taken on August 17, 2022 in this case;

  e.  ***Exhibit 5***: Letter with Demand for Payment on behalf of Accruvia to ABIT dated December 14, 2021; and

  f.  ***Exhibit 6***: Affidavit of Larry L. Fowler, Jr. dated October 4, 2022.

## SIMPLE FACTS

**6.** ***The Plaintiff.*** Plaintiff Accruvia is a Texas corporation. During the month of September 2021, the principal for Accruvia, Shaun Overton, came into contact with executives of ABIT in El Salvador. Particularly with Eric Gravengaard who was, at this time, its Chief Executive Officer[1].

**7.** It is during this time, while in El Salvador, that Accruvia and Overton entered into certain agreements with ABIT and with AHES, respectively, for work related to the implementation of the Bitcoin Law by the Republic of El Salvador.

**8.** ***Accruvia and ABIT sign a Term Sheet.*** On or about September 22, 2021, Overton on behalf of Accruvia, and Eric Gravengaard, on behalf of ABIT, signed and executed a "Term Sheet." *See Appendix* at pp. 3-5. In this Term Sheet it is agreed, subject to the signing of a definitive agreement, for ABIT to acquire Accruvia in accordance with certain items listed on *Exhibit A* to the Term Sheet. Notably, as part of this *Exhibit A* it is established:

  A.  Employment Agreement: An employment agreement is proffered to Overton by ABIT; and

  B.  Miscellaneous: <u>Accruvia agrees to work **exclusively with ABIT** for ABIT's current or future clients</u>. *See Appendix* at p. 4. (Emphasis added.)

**9.** On the other hand, Overton executed, for AHES' benefit, an NDA, on that same date of September 22, 2021. *See Appendix* at pp. 6-17.

---

[1] *See Appendix* at p. 65, Oral Deposition of Eric Gravengaard ("Athena Deposition"), at page 27, lines 13-15.

10. Upon execution of both of these documents, Overton as well as personnel of Accruvia in numerous countries other than the United States, began performing work for Accruvia and, thus, for ABIT exclusively, while working on the implementation of the El Salvador's Bitcoin Law. This work in El Salvador was for the benefit of the "Chivo" project for the operation of the El Salvadorean government's bitcoin automated teller machines ("BTMs"). *See Appendix* at pp. 64-65, Athena Deposition at pages 25 -26, lines 6-25 and 1-3; *Appendix* at pp. 22-23, Accruvia Deposition at pages 17-19, lines 22-25; 1-25 and 1-7.

11. The Term Sheet establishes Accruvia's work was to be done exclusively for ABIT, and not for Athena. With regards to the work done by ABIT and AHES, Mr. Gravengaard testified:

> Q. What does [ABIT] do or what did [ABIT] do as of September-October of 2021?
>
> A. [ABIT] had purchased, in August of 2021, certain intellectual property that it was licensing to the government of El Salvador.
>
> Q. Did that intellectual property deal with the Chivo Wallet software?
>
> A. Yes.
>
> Q. And it's [ABIT] that owns that license; is that right?
>
> A. Yes.
>
> Q. And does [ABIT] -- who has the contract -- or who has the license with the government of El Salvador? Is it [ABIT]? [Athena]? Or one of the other companies that's on the -- that were on that org chart we looked at or some other company?
>
> A. Certain services are provided by [AHES], and some other services are provided to the government by [ABIT].
>
> Q. Does the government of El Salvador have a contract or a license with [ABIT]?
>
> A. Yes.
>
> Q. Does it have a contract or license with Athena Holdings El Salvador, S.A. de C.V.?

   A. Yes.

   Q. Does it have any contracts with [Athena]?

   A. No.[2]

**12.** In short, the work performed by Accruvia was exclusively for ABIT. The work done by Overton was as the Chief Technology Officer for AHES. Both in El Salvador. Never for Athena.

**13.** On or about December 14, 2021, counsel for Accruvia submitted to ABIT a demand for payment for the services which form the basis of this litigation. *See Appendix* at pp. 96-100.

**14.** In conclusion, the evidence in this proceeding shows that all work performed by Accruvia was for ABIT. Accruvia performed no work for Athena.

**15.** Athena advised Accruvia of this defect in the parties in its Special Appearance in the State court proceeding. Despite this knowledge, Accruvia has improperly joined Athena as a party.

## ARGUMENTS & AUTHORITIES

**A. THE CASE SHOULD BE SUMMARILY DISMISSED AS ATHENA HAS NO OBLIGATIONS NOR CONTRACTUAL RELATIONSHIP WITH ACCRUVIA.**

**16.** As previously explained and evinced, any agreement or contract entered into by Accruvia and Overton did not involve Athena.

**17.** Accruvia clearly knows this as the Term Sheet it signed was with ABIT. Additionally, the Term Sheet clearly states that Accruvia and its personnel would be performing work <u>exclusively</u> for ABIT. Not for Athena.

---

[2] *See Appendix* at p. 66, Athena Deposition at pages 32-33, lines 1-25 and 1-5, respectively.

*18.* There is no allegation of fraud by Accruvia. Plaintiff willfully entered into the Term Sheet and now attempts to assert a claim against an incorrect party. *See Appendix* at pp. 3-5.

**19.** This is further acknowledged when Accruvia recognizes that the responsible party, if any amount were to be owed, is ABIT, and not Athena. *See Appendix* at pp. 96-100.

**20.** Accruvia did not provide Athena with valuable services or materials; Athena did not accept any services or materials from Accruvia; and Athena did not have reasonable notice that Accruvia expected to be paid for the services or materials. As such, Accruvia's claim for quantum meruit against Athena must fail.

**B.  AS ACCRUVIA AND ATHENA DO NOT HAVE THE NECESSARY CONTACTS WITH EACH OTHER TO ESTABLISH JURISDICTION IN TEXAS, THIS CASE SHOULD BE SUMMARILY DISMISSED.**

**21.** To be subject to personal jurisdiction, a defendant must have "certain minimum contacts with [Texas] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). The minimum contacts test requires "in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking benefits and protection of its laws." *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *CSR Ltd. v. Link*, 925 S.S.2d 591, 596 (Tex. 1996). A defendant's connection with the state must be such that "he should reasonably anticipate being hauled into court" in the state if a dispute were to occur. *See World-Wide Volkswagen Corp. Woodson*, 444 U.S. 286, 297 (1980).

**22.** Minimum contacts analysis generally requires assessment of whether the court is exercising "general" or "specific" jurisdiction. *See Guardian Royal Exch. Assur. v. English China Clays*, 815 S.W.2d 223, 227-28 (Tex. 1991). The exercise of general jurisdiction requires that a

defendant's contacts with the forum state be "continuous and systematic." *See Helipcopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984); *Guardian Royal*, 815 S.W.2d at 226; *Siskind v. Villa Found. For Educ., Inc.*, 642 S.W.2d 434, 438 (Tex. 1982). A showing of just some sort of continuous activity is not enough to establish general jurisdiction. *See International Shoe*, 326 U.S. at 318. The less connected the alleged continuous activities are from the causes of action at issue, the continuous corporate operations of a defendant must be more substantial. *Id.*

23. The only facts that could be construed to possibly create general jurisdiction over Athena in this case is Accruvia's allegation that Defendant "is going [sic] business in Texas, including owning, operating and/or controlling at least seven crypto ATMs in Texas, including two in Fort Worth, Texas."[3] Even if this allegation is true, ownership of property in Texas is not sufficient for a finding of general jurisdiction. Furthermore, Defendant does not own any crypto ATMs in Texas, as alleged, and Plaintiff has no evidence to the contrary. As such, there are no continuous, systematic, and substantial contacts necessary for a finding of general jurisdiction.

24. Specific jurisdiction is proper when the defendants' contacts with the forum state are related to the controversy underlying the litigation. *See Helicopteros*, 466 U.S. at 414 n.8. To maintain specific personal jurisdiction in Texas, a plaintiff must show (1) the defendant has purposely directed activities toward or purposefully availed itself of the privilege of conducting business in Texas; (2) the cause of action arises from those activities in Texas; and (3) the conduct of defendant has a substantial enough connection with Texas to make the exercise of jurisdiction reasonable. *See Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 774 (Tex. 1995). "The concept of minimum contacts is rooted in the notion that a defendant may reasonably be hauled

---

[3] *See* Plaintiff's First Amended Original Petition, at page 2, ¶ 6.

into the forum state's courts when it purposefully, not randomly or fortuitously, engages in activities there." *See Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 660 (Tex. 2010).

25. Accruvia's live pleading does not specify any basis for a finding of specific jurisdiction, but presumably Plaintiff will rely on its allegations that the contract at issue "was breached with a Texas resident and involved work done under that agreement in Texas."[4] However, the alleged work performed by Accruvia could have been conducted anywhere and the alleged contract did not necessitate any activity to be performed in Texas. *See Appendix* at pp. 103-108. As Accruvia even asserted in its live pleadings in this case, the alleged contract was "performable" in Texas. Athena's awareness that Plaintiff was located in Texas and that the work might be performed in Texas is not enough to establish that Defendant purposefully availed itself of the privilege of doing business in Texas. *See Counter Intelligence v. Calypso Waterjet Systems, Inc.*, 216 S.W.3d 512, 520 (Tex. App.—Dallas 2007, pet. denied). Simply put, Plaintiff's claims do not arise out of activity by Defendant in Texas. *Id.* (citing *Helicopteros*, 466 U.S. at 414).

26. Needless to say the fact that Plaintiff and Athena did not have any contract between them further supports the position of Athena that it is not subject to jurisdiction in the State of Texas.

## PRAYER

WHEREFORE, Defendant Athena requests that, after hearing on this matter, this Court grant this Motion for Summary Judgment and that Plaintiff take nothing on its claims against Athena. Athena further requests any other just relief to which it may be entitled at law and in equity.

---

[4] Plaintiff's First Amended Original Petition, at page 2, ¶ 6.

Respectfully submitted,

*/s/ Larry L. Fowler, Jr.*
LARRY L. FOWLER, JR.
State Bar No. 07321900

**HARRIS ✯ COOK, L.L.P.**
1309-A West Abram
Arlington, Texas 76013
817/299-2841 – Telephone
817/460-8060 – Facsimile
Email: Larry@HarrisCookLaw.com
**ATTORNEYS FOR DEFENDANT ATHENA BITCOIN, INC.**

### CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2022, a true and correct copy of the above and foregoing document has been served on all counsel of record listed below via email through the PACER system.

Kelly Stewart
K Stewart Law, P.C.
5949 Sherry Lane, Suite 900
Dallas, TX  75225
kelly@kstewartlaw.com
Attorney for Plaintiff

*/s/ Larry L. Fowler, Jr.*
LARRY L. FOWLER, JR.