UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ROI DEVELOPERS, INC., | § | |
| d/b/a ACCRUVIA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-00073-O |
| | § | |
| ATHENA BITCOIN, INC., | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S RESPONSE
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

                                                                     **Page**

**RELEVANT FACTS** ............................................................................................................... 1

**ARGUMENTS AND AUTHORITIES** ................................................................................... 9

**I. The Court Should Deny Defendant's Motion Based On No Evidence** .............................. 9

**II. The Court Should Deny Defendant's Motion Based On Personal Jurisdiction** .............. 12

**CONCLUSION** ....................................................................................................................... 16

# **TABLE OF AUTHORITIES**

<u>Cases</u>

*Am. Airlines, Inc. v. Red Ventures LLC,* No. 4:22-cv-0044-P, 2022 U.S. Dist. LEXIS 90942 (5th Cir. 2022)................................................................................................................ 12

*Athena Bitcoin Global v. Overton*, No. 22 C 1291, 2022 U.S. Dist. Lexis 141447 (N.D. Ill. August 9, 2022)................................................................................................................ 9

*Casares v. Agri-Placements Int'l, Inc.*, 12 F.Supp. 3d 956 ( S.D. Tex. 2014) .............................. 12

*Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376 (5th Cir. 2003) ............................ 14

*Cruson v. Jackson Nat'l Life Ins. Co.,* 954 F.3d 240 (5th Cir. 2020)............................................ 12

*Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491 (5th Cir. 2022) ............. 15

*Ecigrusa LLC v. Silver State Trading LLC*, No. 3:21-CV-1846-B, 2022 U.S. Dist. LEXIS 79793, (N.D. Tex. May 3, 2022)................................................................................. 12, 13

*Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867874 (5th Cir. 1999)................. 14

*Fret v. Melton Truck Lines, Inc.,*706 F.App'x 824 (5th Cir. 2017) ............................................... 10

*Hale v. Abangan*, No. 18-60183, 2022 U.S. App. LEXIS 27078 (5th Cir. 2022) ......................... 10

*Harrison Co., L.L.C. v. A-Z Wholesalers, Inc.*, No. 21-11028, 2022 U.S. App. LEXIS 22364 (5th Cir. April 11, 2022) ................................................................................................. 10

*Matrix Warranty Sols., Inc. v. Staunton Grp, LLC*, No. 3:21-CV-3111-K, 2022 U.S. Dist. LEXIS 98425 (N.D. Tex. June 2, 2022) ........................................ 12, 13, 14, 15

*McGuire v. Chackel,* No. 21-cv-00210-RP-SH, 2022 U.S. Dist. LEXIS 108148 (W.D. Tex. 2022) ........................................................................................................... 9, 10

*Oto Analytics, Inc. v. Cap. Plus Fin., LLC*, No. 3:21-CV-2636-B, 2022 U.S. Dist. LEXIS 85031 (N.D. Tex. May 11, 2022)................................................................................... 11

*Ruiz v. Bank of Am., N.A.*, No. 3:18-CV-2707-L, 2021 U.S. Dist. LEXIS 259829 (N.D. Tex. Feb. 2, 2021) ................................................................................................. 10

*Sangha v. Navi8 Shipmanagment Private Ltd.*, 882 F.3d 96 (5th Cir. 2018) ................................ 13

*Tutus, L.L.C. v. JLG Indus., Inc.*, No. 21-20383, 2022 U.S. App. LEXIS 13012 (5th Cir. May 12, 2022) .................................................................................................. 12

**PLAINTIFF'S RESPONSE
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The Court should deny Defendant's Motion for Summary Judgment [1] (Dkt. 14) ("Defendant's Motion") for two reasons:

- Even though Defendant Athena Bitcoin, Inc. ("Athena") did not meet its burden to obtain a "no evidence" summary judgment motion, Plaintiff ROI Developers, Inc., d/b/a Accruvia ("Accruvia") nonetheless has shown that there is a material question of fact on its breach of contract and quantum meruit claims; and

- The Court has personal jurisdiction over Athena because the unpaid work that forms the basis of Accruvia's contract/quantum meruit claims was done for Athena's bitcoin ATMs in Texas, establishing specific personal jurisdiction.

**RELEVANT FACTS**

*Accruvia's business*

1. Shaun Overton "Overton" is the President of Accruvia. Affidavit of Shaun Overton ("Overton Aff.) ¶1 (P's App. at Ex. 1).[2]

2. Accruvia is a Texas corporation, its principal office is in Hurst, Texas, and Overton resides in Texas. Overton Aff. ¶2.

3. Accruvia's primary business is that of an API (applications programming interface)

---

[1] The case caption on Defendant's Motion is incorrect. The live amended petition when removed from state court to this Court did not include "d/b/a Athena Bitcoin Global" in the case caption under the Defendant's name. Likewise, Shaun Overton did not testify as Accruvia's corporate representative, as Defendants represent. Defendant's Motion ¶5.c. He testified as an individual. Athena's Appendix (Dkt. 15) ("D's App.") at Ex. 3 (cover page and at p. 4, ll.9-18).

[2] Unless otherwise indicated (e.g., where the evidence was submitted by Athena in its Appendix—"D's App."), all evidence Accruvia is submitting in response is in Plaintiff's Appendix in Support of Response to Motion for Summary Judgment ("P's App."), which is being filed contemporaneously and is incorporated by reference.

integrator, which means it develops software that allows two other unrelated software platforms to work and communicate with each other. Overton Aff. ¶3.

### *Accruvia's first involvement with Athena*

4. Accruvia had been hired by a consultant for the government of El Salvador to fix certain software problems with a government-sponsored bitcoin project called Chivo Wallet (see Chivo Wallet section below) in the late-summer/early-fall of 2021. Overton Aff. ¶4. One of Accruvia's tasks was to help fix the problems and bugs caused by software for Chivo Wallet that had been developed by an "Athena Bitcoin" entity. Overton Aff. ¶4.

5. During that process Overton became aware of "Athena Bitcoin" and its CEO, Eric Gravengaard ("Gravengaard") in September 2021. Overton Aff. ¶5; D's App. at Ex. 4 (p.86, l.14-p.89, l.7); D's App. at Ex. 3 (p. 18, l18-p. 21, l.8; p.133, l.7-p.133, l.24).

6. Gravengaard was the CEO of Athena Bitcoin Global ("ABIT," as referred to in Defendant's Motion) and a director of Athena. Defendant's Motion ¶6; D's App. at Ex. 4 (p.26, ll. 11-21). Gravengaard was also the CEO of Athena in 2019. D's App. at Ex. 4 (p.72, l.25-p.73, l.4).

7. Athena is the operating subsidiary of ABIT. D's App. at Ex. 4 (p.21, ll.21-25; p.23, l.24-p.24, l.8); SEC Form S-1 at 18 (excerpts at P's App. at Ex. 2-G). Athena was a wholly owned subsidiary of ABIT at the relevant time period here, with ABIT acting as a holding company of Athena. D's App. at Ex. 4 (p.33, ll.6-14); P's App. at Ex. 2-G. Athena has the same address as ABIT. D's App. at Ex. 4 (p.74, ll. 4-14).

### *Athena's relationship to Texas*

8. Athena operates bitcoin ATMs in the United States, D's App. (p. 31, ll.18-25), including bitcoin ATMs in Texas. Defendant's Supplemental Responses to Plaintiff's First Set of

2

Personal Jurisdiction Discovery ("Discovery Responses") (P's App. at Ex. 2-A) at RFAs 5, 6 (admitting that Athena owns property in Texas, namely "movable, personal property in the form of crypto ATMs in Texas"); Discovery Responses at RFAs 4 (admitting Athena owns in Texas "the ATMs in operation"); D's App. at Ex. 4 (p.36, ll.15-18). Athena obtains revenues from those bitcoin ATMs. Discovery Responses at RFA 10.

9. Although Athena is a Delaware corporation, D's App. at Ex. 4 (p. 17, ll.1-3), Athena is registered to do business in Texas. P's App. at Ex. 2-A ( RFA 1); D's App. at Ex. 4 (p.45, ll.6-11; p.68, ll.4-11). It has a registered agent, and it files Texas Franchise Tax Public Information Reports. P's App. at Ex. 2-A (RFA 2, 3); D's App. at Ex. 4 (p.36, l.19-p.39, l.12); Texas Franchise Tax Public Information Reports (P's App. at Ex. 2-C)

10. Athena obtained revenue from its bitcoin ATMs, including those in Texas. D's App. at Ex. 4 (p.73, ll.5-14); P's App. at Ex. 2-A (RFA 10).

11. Athena's website, which is accessible by Texas residents, lists eight bitcoin ATM locations in Texas, shows that Athena has a presence in Texas, and Athena intends for that website to be accessible to all Internet users, including those in Texas. P's App. at Ex. 2-A (at RFAs 11-17); D's App. at Ex. 4 (p.60, ll.9-23; p.61, l.1-p.65, l.5); Athena Website Printouts (P's App. at Ex. 2-D).

12. Athena currently employs one person in Texas, Bailey Jarrell. D's App. at Ex. 3 (p.135, l.25-p.136, l.3).

*The "Term Sheet" between Accruvia and Athena*

13. In September of 2021, Accruvia entered into a "Term Sheet"—essentially a non-binding letter of intent signed by "Athena Bitcoin Global, Inc."—not ABIT—under which Overton was going to work for Athena Bitcoin Global, Inc. (the signatory), as an employee and do other

3

work IF the parties conducted due diligence and closed on the deal by the targeted date of October 22, 2021.  D's App. at Ex. 1; D's App. at Ex. 4 (p.30, ll.9-17); Defendant's Motion at 4 (admitting that the Term Sheet was "subject to the signing of a definitive agreement").

14.     The parties did not close any deal or sign any "definitive transaction documents" as anticipated, but not required, by the Term Sheet.  Overton Aff. ¶7.

15.     Overton entered into the Term Sheet, even though he was giving up a $4.5 million opportunity with the government of El Salvador, based on Gravengaard's representations as to the business and plans of "Athena."  D's App. at Ex. 3 (p. 53, l.8-p.54, l.6).

16.     Athena knew that Accruvia was based in Texas, that Overton lived in Texas, and that work by Accruvia was done, in part, in Texas.  D's App. at Ex. 4 (p.102, l.11-p.103, l.4; p.103, ll.14-18; p.105, ll.14-23); Overton Aff. ¶¶9, 11.

*The work Accruvia did for Athena*

17.     In October 2021 Accruvia subsequently performed custom software development for Athena on Chivo Wallet, along with providing supplemental marketing services.  Overton Aff. ¶10; P's App. at Exs. 1-B – 1-F.  The work done by Accruvia related to Chivo Wallet.  Defendant's Motion ¶11; Overton Aff. ¶15; D's App. at Ex. 3 (p.7, l.24-p. p.12, l.19; p. 131, ll.17-23); D's App. at Ex. 4 (p.74, l.19-p.75, l.24; p.79, ll.6-9).

18.     Overton believed, at the time Accruvia started the work that forms the basis of this lawsuit, that he was working for Athena.  D's App. at Ex. 3 at p. 62-65.

19.     The work was not done pursuant to the terms of the "Term Sheet," although Overton's rate was pulled from the Term Sheet.  D's App. at Ex. 3 (p.124, l.20-p.127, l.3).

20.     This work, which was directed by Athena, was provided to Athena and/or done for Athena.³  Overton Aff. ¶12; D's App. at Ex. 3 (p.70, ll. 14-22; p.80, ll. 13-17; p.81, ll. 7-10; p.130, l.25-p.131, l.7).

21.     The work in question was done by Overton while in Texas and elsewhere, by an Accruvia employee in Texas, and by contractors elsewhere.  Overton Aff. ¶11; D's App. at Ex. 3 at p. 72, ll. 9-23.  Athena knew Overton lived in Texas.  D's App. at Ex. 4 (p.103, ll14-18).  The work was directed by persons at Athena.

### *The work's relationship to Athena's Texas bitcoin ATMs*

22.     As noted, the work in question performed by Accruvia that forms the basis of this lawsuit was done for the Chivo Wallet project.  Overton Aff. ¶15; D's App. at Ex. 3 (p.7, l.24-p. p.12, l.19; p. 131, l.17-p.132, l.6); D's App. at Ex. 4 (p.74, l.19-p.75, l.24; p.79, ll.6-9).

23.     Chivo Wallet was a project of the government of El Salvador to address the "remittance" market with ATMs, or to assist in limiting or lowering commissions charged for the transfer of moneys, often from individuals in the United States to individuals in El Salvador.  Overton Aff. ¶13.  Chivo Wallet, when used in a bitcoin ATM in the United States using its technology, would allow a person in the United States to deposit cash in a bitcoin ATM, which would then convert the cash to bitcoin, and then that bitcoin could be obtained by someone in El Salvador (or anywhere) who has the Chivo Wallet app.  Overton Aff. ¶13.  The recipient can then sell the bitcoin at a cryptocurrency ATM to withdraw U.S. dollars.  Overton Aff. ¶13.  Chivo Wallet was a way to dramatically lower the commission charged in a pure cash-to-cash transfer.

---

³ Accruvia denies that the work was done "for ABIT exclusively," as Defendant represents. Defendant's Motion ¶¶10-12.  Athena admitted that its sworn interrogatory responses were incorrect on this point.  D's App. at Ex. 4 (p.115, l.14-p.118, l.21).

Overton Aff. ¶13.  In other words, "[t]he whole point of the Chivo Wallet ecosystem . . . the whole purpose of the product is that you can go up to a physical ATM and put money in it and send it to El Salvador.  Without the physical ATMs in Texas, it doesn't make any sense."  D's App. at Ex. 3 (p.82, l. 20-p.83 l.4).

24. Chivo Wallet had to use Athena's bitcoin ATMs in Texas to operate, and Chivo Wallet had to "talk to" bitcoin ATMs "otherwise, there's no point."  D's App. at Ex. 3 (p.84, ll. 5-20; p.88, ll.13-14).  One has to use Athena's bitcoin ATMs to "skip the commissions, which is the entire point of building Chivo Wallet."  D's App. at Ex. 3 (p.88, l.25-p.89, l.3).  And one cannot divorce Chivo Wallet from Athena's bitcoin ATMs in the United States.  D's App. at Ex. 3 (p.129, l.3-p.130, l.2).[4]

25. Chivo Wallet is also known as Chivo Core.  Declaration of Panagiotis Angelopolous (P's App. at Ex. 3).  Athena's bitcoin Salvadoran entity used its dollar and bitcoin balances within Chivo Core to deliver bitcoin to anyone transacting business at a Chivo ATM, including those in the United States (including Texas, of course).  *Id.*  The work Accruvia did for Athena was used, in part, to help resolve various outages with ATMs using Chivo Core, *id.,* and those ATMs had to directly interface with Chivo Core.  *See* Supplemental Declaration of Panagiotis Angelopolous (P's App. at Ex. 4).

26. A diagram provided to Accruvia by the government of El Salvador as part of the work Accruvia was doing on Chivo Wallet for Athena also shows that Chivo Core is part of Chivo Wallet—something that Athena admitted.  P's App. at Ex. 1-A; D's App. at Ex. 4 (p.143, l.11-p.144, l.5); Overton Aff. ¶14.

---

[4] Defendant submitted the entirety of Overton's deposition transcript without preserving any of its objections to the form of any questions.

*Athena's Inconsistent Testimony about the work Accruvia performed*

27. Gravengaard's testimony about Athena's work with Chivo Wallet was inconsistent with what ABIT (with its "business operations [] conducted by Athena") put its SEC filings: "The Chivo digital wallet also allows Salvadorans in the U.S. to send money home without incurring remittance fees." P's App. at Ex. 2-G at 59. The SEC filings also make clear that Chivo Wallet, among other things, allows the sending and receiving between U.S. and bitcoin users in El Salvador. P's App. at Ex. 2-G at 5.

28. In his deposition, however, Gravengaard testified to the contrary: Chivo Wallet was not "used to facilitate remittances between two ATMs"; it had no use for bitcoin ATMs in the United States; one has to be in El Salvador to use Chivo Wallet; and it cannot be used in the United States; and there does not have to be a Chivo Wallet connection between it and a bitcoin ATM in the United States for Chivo Wallet to work; and Chivo Wallet "has absolutely no connection or role with Athena's US Bitcoin ATMs." D's App. at Ex. 4 (p.121, l.21-p.123, l.17; p.129, ll.6-15; p.136, l.21-p.137, l.5).[5]

29. Athena Ruru is another Athena-related product that is "based on similar concepts and some of the same intellectual property" from Chivo Wallet. D's App. at Ex. 4 (p.144, l.6-p.145, l.4). The code for Athena Ruru, which is also another name for Chivo Wallet, also

---

[5] At his deposition, Gravengaard claimed that he did not know that he was being deposed as the corporate representative for Athena until he was shown the corporate representative deposition notice. D's App. at Ex. 4 (p.6, l.10-p.7, l7). Gravengaard could not answer basic questions about the benefits of Chivo Wallet, despite claiming that ABIT was hired by El Salvador to develop it. D's App. at Ex. 4 (p.126, l.17-p.131, l.16). Gravengaard did not do any work to prepare for at least one other topic. D's App. at Ex. 4 (p.59, ll.7-12). Indeed, when asked what he did to prepare for his corporate representative deposition in general, Gravengaard flippantly responded that he "put on a nice shirt . . . [c]ombed my hair, took a shower." D's App. at Ex. 4 (p.9, ll.1-12).

7

includes coding that Accruvia's representatives performed. Supplemental Declaration of Panagiotis Angelopolous (P's App. at Ex. 4). The coding done by Accruvia for Athena Ruru is part of the work/invoices sued under here. Overton Aff. ¶15.

30. Gravengaard testimony about Athena Ruru is also inconsistent with other evidence and ABIT's SEC filing (noting that Athena is ABIT's operating entity). Gravengaard testified that he was not sure whether the work done by Accruvia for Chivo Wallet "has survived to be a part of the Ruru software at this time" and that D's App. at Ex. 4 (p.147, ll.6-12). However, Athena Ruru uses the same code base as Chivo Wallet, P's App. at Ex. 4, and ABIT's SEC filing says that Athena Ruru is based on the "App," which is part of Chivo Wallet. P's App. at Ex. 2-G at 5, 6— meaning that Athena Ruru incorporates Accruvia's work in question.

### *Athena's payment of the first invoice for Accruvia's work and failure to pay subsequent invoices*

31. Accruvia invoiced Athena, per directions from Athena, for that work. Overton Aff. ¶16. Overton worked with Noreen Pepino, an Athena (not ABIT) employee, in sending invoices to Athena. Overton Aff. ¶16; D's App. at Ex. 4 (p.49, ll.7-9). Athena and ABIT have the same email address and website. D's App. at Ex. 4 (p.54, ll.5-11; p.60, ll.9-13).

32. Athena, not ABIT, as indicated by payment entries, paid Accruvia for the first invoice on that work, as invoiced. Overton Aff. ¶17; Overton Aff. at Exs. 1-B, 1-C, 1-D (invoice and payment/invoicing records showing paid by "Athena Bitcoin Inc.").

33. The banking records produced by Athena show that a payment was made to Accruvia by Athena from an Athena bank account. D's App. at Ex. 4 (p.96, l.24-p.97-l.14); Bank Record (P's App. at Ex. 2-F).

34. No entity, Athena, ABIT or otherwise—paid Accruvia for invoices for the subsequent work, which was invoiced for $83,678.91. D's App. at Ex. 4 (p.76, ll.10-15); Overton Aff. ¶20. That amount remains due and owing to Accruvia. Overton Aff. ¶¶20-21.

35. Athena admitted that the only reason no Athena-related entity has paid Accruvia for the work was because ABIT was upset with Overton's actions relating to certain actions Overton took in El Salvador[6]—not because the work was bad, not received, or because of any problems with the work in question. D's App. at Ex. 4 (p.82, l.6-p.83, l.5). The non-payment had nothing to do with the quality or lack of receipt or use of the work. *Id.* ABIT even tried to hire the Accruvia developers who performed the work, and did hire one of them and Jarrell, who performed the marketing work that is part of the work in question. D's App. at Ex. 4 (p.83, l.6-p.84, l.19); D's App. at Ex. 3 (p.136, l.15-p.138, l.3); Overton Aff. ¶11.

## ARGUMENTS AND AUTHORITIES

### I. The Court Should Deny Defendant's Motion Based On No Evidence.

Athena's first ground for summary judgment is that there is no evidence on Accruvia's breach of contract and quantum meruit claims. Defendant's Motion at 2-3. Athena, however, has not met its burden to obtain summary judgment.

To begin with, a "no evidence motion for summary judgment is only available in the Texas State courts." *McGuire v. Chackel,* No. 21-cv-00210-RP-SH, 2022 U.S. Dist. LEXIS 108148, *4 (W.D. Tex. 2022). Conclusory statements in a summary judgment motion that there is no

---

[6] After this case was filed, ABIT sued Overton based on these alleged El Salvadoran actions in federal court in Illinois—a case that was dismissed for lack of personal jurisdiction over Overton. *See Athena Bitcoin Global v. Overton*, No. 22 C 1291, 2022 U.S. Dist. Lexis 141447 (N.D. Ill. August 9, 2022). The allegations in that case did not deal with the payments of invoices at issue here.

evidence—as here (Defendant's Motion at 3)—are insufficient to shift the burden to Accruvia (or to grant Defendant's Motion). *See Fret v. Melton Truck Lines, Inc.,* 706 F.App'x 824, 828 (5th Cir. 2017); *Ruiz v. Bank of Am., N.A.*, No. 3:18-CV-2707-L, 2021 U.S. Dist. LEXIS 259829, *8-9 (N.D. Tex. Feb. 2, 2021). Even when coupled with the few facts actually mentioned, Defendant's Motion ¶¶1-2, 6-15, Athena did not meet their burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *McGuire*, 2022 U.S. Dist. LEXIS 108148 at *4 ("[T]he Court should apply the appropriate federal standard" to a no-evidence summary judgment motion.). The Court should deny Defendant's Motion on this ground alone.

Regardless, to the extent that Athena met its burden to show that there is an absence of material fact as to both of Accruvia's claims, Accruvia is submitting sufficient evidence raising fact issues on its claims. All facts, evidence and inferences—whether raised by Accruvia or Athena—must be construed in the light most favorable to Accruvia. *See Hale v. Abangan*, No. 18-60183, 2022 U.S. App. LEXIS 27078, * 2-3 (5th Cir. 2022); *Fret*, 706 F.App'x at 827.

A claim for breach of contract under Texas law requires (1) a valid contract; (2) performance by Accruvia as contractually required; (3) a breach by Athena; and (4) damages due to the breach. *Harrison Co., L.L.C. v. A-Z Wholesalers, Inc.*, No. 21-11028, 2022 U.S. App. LEXIS 22364, *7 (5th Cir. April 11, 2022). The elements of a quantum meruit claim are: (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) those services and materials were accepted by the person sought to be charged, and were used and enjoyed by him; and (4) the person sought to be charged was reasonably notified that the plaintiff performing such services or furnishing such materials was expecting to be paid by the

person sought to be charged. *Oto Analytics, Inc. v. Cap. Plus Fin., LLC*, No. 3:21-CV-2636-B, 2022 U.S. Dist. LEXIS 85031, *40 (N.D. Tex. May 11, 2022).

The facts here show evidence on each element of both claims (Accruvia incorporates by reference all facts in its Relevant Fact section, *supra*, and in its accompanying Appendix):

| Facts | Cause of Action Element |
|---|---|
| Accruvia entered into an agreement to perform software development work, along with related marketing work, for Athena. Relevant Facts ¶¶17, 20-21, *infra*. Accruvia believed it was doing work for Athena, not ABIT. Relevant Facts ¶¶18, *infra*. | Contract Breach: Valid contract/agreement with Athena<br><br>Quantum meruit: Services were performed for Athena. |
| Accruvia actually performed the work in question, and the work was provided to Athena. Relevant Facts ¶¶17, 20-21, *infra*. | Contract breach: Performance by Accruvia<br><br>Quantum meruit: Valuable services rendered or materials furnished for/to Athena; services were performed for Athena |
| Accruvia's work was used with respect to Athena's Texas bitcoin ATMs. Relevant Facts ¶¶17, 20-26, *infra*. | Quantum meruit: Services were for performed for Athena; services/materials accepted by Athena; services/materials were used by Athena |
| Accruvia expected payment, and Athena knew that Accruvia expected payment based, in part, on the invoices sent by Accruvia to Athena for the work. Relevant Facts ¶¶21-33, *infra*. | Quantum meruit: Services rendered/materials furnished to Athena; Athena was reasonably notified that Accruvia was expecting to be paid by Athena |
| Athena paid Accruvia's first invoice, and payment records show that Athena was to be making the other payments. Relevant Facts ¶32, *infra*. Accruvia worked with an Athena, not ABIT, employee regarding the payments. Relevant Facts ¶31, *infra*. | Quantum meruit: Services/materials were accepted by Athena; Athena was reasonably notified that Accruvia was expecting to be paid |
| Accruvia has not been paid for work that was invoiced at $83,678.91. Relevant Facts ¶34, *infra*. Accruvia is still owed that amount by Athena. Relevant Facts ¶34, *infra*. | Contract breach: breach by Athena; damages to Accruvia<br><br>Quantum meruit: damages to Accruvia |

Because there are facts supporting each element of Accruvia's causes of action—and because those facts must be construed in the light most favorable to Accruvia—summary judgment is improper and, therefore, should be denied.

11

## II.     The Court Should Deny Defendant's Motion Based On Personal Jurisdiction.

Assuming Athena did not waive its personal jurisdiction defense by first seeking summary judgment on substantive grounds,[7] Athena's tag-along second summary judgment request based on personal jurisdiction is unfounded.

Although Accruvia bears the burden of establishing personal jurisdiction, it is "required to present only *prima facie* evidence" of jurisdiction. *Ecigrusa LLC v. Silver State Trading LLC*, No. 3:21-CV-1846-B, 2022 U.S. Dist. LEXIS 79793, *6 (N.D. Tex. May 3, 2022). A preponderance of evidence is not required, and any conflicts in affidavits submitted are to be resolved in favor of Accruvia. *Am. Airlines, Inc. v. Red Ventures LLC,* No. 4:22-cv-0044-P, 2022 U.S. Dist. LEXIS 90942, *5 (5th Cir. 2022). In determining whether *prima facie* evidence exists, the Court must accept as true all uncontroverted allegations and resolve in Accruvia's favor "all conflicts between the jurisdictional facts contained in the parties' affidavits and other documents." *Ecigrusa*, 2022 U.S. Dist. LEXIS 79793 at *6*; accord Tutus, L.L.C. v. JLG Indus., Inc.*, No. 21-20383, 2022 U.S. App. LEXIS 13012, *3-4 (5th Cir. May 12, 2022).

In a diversity jurisdiction case, as here, personal jurisdiction over Athena exists if Athena has sufficient minimum contacts with Texas and exercising jurisdiction is consistent with "traditional notices of fair play and substantial justice." *Matrix Warranty Sols., Inc. v. Staunton Grp, LLC*, No. 3:21-CV-3111-K, 2022 U.S. Dist. LEXIS 98425, *5 (N.D. Tex. June 2, 2022). It

---

[7] Athena did not make its summary judgment motion subject to its personal jurisdiction defense. *Cf. Cruson v. Jackson Nat'l Life Ins. Co.,* 954 F.3d 240, 249-250 (5th Cir. 2020) (noting that omitting personal jurisdiction defense from Rule 12 motion waives defense); *Casares v. Agri-Placements Int'l, Inc.*, 12 F.Supp. 3d 956, 964 ( S.D. Tex. 2014) (finding that party waived personal jurisdiction defense when it joined in motion for summary judgment, but party that did not join summary judgment motion did not waive personal jurisdiction); *id.* at 966 (noting that summary judgment asks court to enter judgment on the merits, and when omitted from Rule 12 motion it is waived).

is well settled that personal jurisdiction can be general or specific. *Id.* Specific jurisdiction exists when "the plaintiff's claims arise out of or are related to a non-resident defendant's contact which he 'purposefully directed' at the forum state." *Id.* Specific jurisdiction may exist over a nonresident defendant whose contacts with the form state are singular or sporadic if the cause of action asserted arises out of or is related to those contacts. *Sangha v. Navi8 Shipmanagment Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018).

Courts in the Fifth Circuit "conduct a three-step analysis in the specific-jurisdiction inquiry:

> (1) Whether the defendant has minimum contacts with the forum state, i.e., whether it purposefully directed its activities toward the forum state or purposefully availed itself of the privilege of conducting business activities there;
>
> (2) Whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and
>
> (3) Whether the exercise of personal jurisdiction is fair and reasonable.

*Matrix Warranty*, 2022 U.S. Dist. LEXIS 98425 at *7. Accruvia bears the burden on the first two prongs, but after those two factors have been established the burden shifts to Athena to "make a compelling case" that the assertion of jurisdiction is unfair or unreasonable. *Id.*

When determining personal jurisdiction involving a breach of contract claim, the Court should consider, among many other factors, acts relating to the terms of the contract and the parties' actual course of dealing. *Ecigrusa*, 2022 U.S. Dist. LEXIS 79793 at *11. "The ultimate question is whether the alleged breached contract had a *substantial* relationship to the forum state, considering the totality of the circumstances." *Id.* (emphasis in original).

The totality of the circumstances here establish specific jurisdiction over Athena because there is a substantial relationship between the breached contract (and quantum meruit claim) and

13

Texas, including but not limited to Athena's general relationship to Texas (Accruvia incorporates by reference all facts in its Relevant Fact section and its accompanying Appendix):

- Athena owns and operates bitcoin ATMs in Texas. Athena obtains revenues from those Texas-based ATMs. Relevant Facts ¶¶8, 10, *infra*.

- Athena is registered to do business, actually does business, and files franchise tax reports in Texas. Relevant Facts ¶9, *infra*.

- Athena's website, which is accessible by Texas residents, lists eight bitcoin ATMs in Texas and shows that Athena has a business presence in Texas. Relevant Facts ¶11, *infra*.

- Athena currently has one employee in Texas, who worked on the work for Accruvia that formed the basis of this lawsuit while she was in Texas. Relevant Facts ¶¶12, 21, *infra*.

- In contracting with Accruvia, Athena knew that Accruvia was located in Texas and that Overton lived in Texas. Athena knew that the work was to be performed, in part, in Texas. The Accruvia employee doing the marketing work in question performed her job in Texas. Relevant Facts ¶¶16, 21, *infra*.

- Accruvia performed the work in question, in part, in Texas. Relevant Facts ¶21, *infra*.

- The work in question that forms the basis of Accruvia's claims was done for and was used by Athena in Athena's bitcoin ATMs in Texas. Relevant Facts ¶¶22-26, *infra*.

These facts clearly establish *at a minimum* a *prima facie* showing of the first two points Accruvia must show for personal jurisdiction: that Athena has the requisite minimum contacts with Texas and that Athena's causes of action arise out of Athena's forum-related activities (this lawsuit is a breach of contract/quantum meruit claims for failure to pay work done by Accruvia, in part, in Texas, and for work that was used by Athena in its Texas bitcoin ATMs). *See Matrix Warranty*, 2022 U.S. Dist. LEXIS 98425 at *7 (listing two requirements); *see also Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 385 (5th Cir. 2003) (personal jurisdiction upheld); *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867874 (5th Cir. 1999) (personal jurisdiction found).

14

The facts here are different than those in *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491 (5th Cir. 2022), where a Texas law firm sued a non-Texas law firm regarding splitting attorneys' fees. There the work in question was not performed in Texas and the relationship at issue involved the non-Texas law firm's legal representation of a non-Texas client in a non-Texas case, which was centered outside of Texas. *Id.* at *24. Here, on the other hand, the work in question was to be and was used in Athena's bitcoin ATMs in Texas.

Because Accruvia has shown the first two requirements, whether the exercise of personal jurisdiction is fair and reasonable is Athena's burden. *Matrix Warranty*, 2022 U.S. Dist. LEXIS 98425 at *7. Athena cannot do this, as it is fair and reasonable for a company that contracts (Athena) with a Texas company (Accruvia) to do work that is going to be and was utilized in Texas property (Athena's Texas bitcoin ATMs) to be required to answer in a Texas court for failure to pay the Texas company (Accruvia) for work it performed.

Defendant's Motion based on personal jurisdiction should, therefore, be denied.

## **CONCLUSION**

Based on the foregoing, Accruvia requests that the Court deny Defendant's Motion and grant Accruvia all other relief to which it is entitled.

15

Dated this 24th day of October, 2022.

                                        Respectfully submitted,

                                        */s/ Kelly Stewart*
                                        Kelly Stewart
                                        Texas Bar No. 19221600
                                        K STEWART LAW, P.C.
                                        5949 Sherry Lane, Suite 900
                                        Dallas, Texas 75225
                                        Telephone: 972.308.6168
                                        kelly@kstewartlaw.com

                                        **ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

      I certify on the 24th day of October, 2022, I filed this document electronically with the Court using the CM/ECF system, which will sent a notice of electronic filing to counsel of record.

                                        /s/ *Kelly Stewart*